IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ALINA & A TOURS, INC.,

      Plaintiff,

      v.

ROYAL CARIBBEAN CRUISES LTD AND
CELEBRITY CRUISES INC.,

      Defendants.

**CIVIL NO. 06-1009 (JAG)**

## REPORT AND RECOMMENDATION

### INTRODUCTION

On December 29, 2005, plaintiff Alina & A Tours, Inc. d/b/a/ A&A Tours (hereinafter "A&A Tours") filed a civil action in state court against Royal Caribbean Cruises Ltd and Celebrity Cruises, Inc. (hereinafter "RCCL" and "Celebrity", respectively), Civil No. KPE2005-4949 (901).   On that same day, A&A Tours presented a motion requesting a temporary restraining order ("TRO") and preliminary injunction.  The Court of First Instance issued a TRO under local Law 21, 10 L.P.R.A. §279 et seq., in plaintiff's favor.

On January 4, 2006, the case was removed to this Court.  (Docket No. 1).  On January 5, 2006, A&A Tours filed a Motion for Hearing and a Motion for Temporary Restraining Order and Order to Show Cause for Preliminary Injunction with a Memorandum of Law in support thereof.  (Docket No. 5). On the same day, these motions were referred to a United States Magistrate Judge for prompt hearing and disposition.  In the referral Order, the Court ruled that the TRO issued by the state court shall remain in full force and effect, pursuant to Title 28,

United States Code, § 1450.  Pursuant to Fed.R.Civ.P. 65(b), this Court found that good cause existed to extend the TRO for a period of ten (10) days, that is until January 20, 2006.  (Docket Nos. 4, 5 and 7).

On January 10, 2006, RCCL and Celebrity filed a Motion to Dismiss in order to Compel Arbitration of Contractual Disputes.  (Docket No. 9)[1].  On January 11, 2006, a Status Conference was held before this United States Magistrate Judge.  (Docket No. 10).  On January 13, 2006, RCCL and Celebrity filed an Information Motion indicating they did not consent to extend the TRO beyond January 20, 2006.  (Docket No. 12).  On January 18, 2006, A&A filed its Opposition to defendants' Motion to Dismiss in order to Compel Arbitration of Contractual Disputes.  (Docket No. 13).  On January 19, 2006, RCCL and Celebrity filed their Opposition to plaintiff's Preliminary Injunction Request.  (Docket No. 14).

On January 20, 2006, the evidentiary hearing was held before the undersigned United States Magistrate Judge.  The parties presented the testimony of witnesses and documentary evidence in support of their respective positions.  The witnesses for A&A Tours included Mr. Guillermo Rammos, Associate Vice President for Celebrity, Ms. Alina Castellanos, President of A&A Tours, and Mr. Alberto Castellanos, Vice President of A&A Tours.  RCCL and Celebrity

---

[1] This Motion to Dismiss has not been referred to the undersigned, thus, the same is not object of this report and recommendation.  Nonetheless, it is worth noting that a district court has jurisdiction to issue preliminary injunctions to preserve the *status quo* pending arbitration.  Puerto Rico Hosp. Supply v. Boston Scientific, 426 F.3d 503, 504 (1st Cir. 2005); Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 151 (1st Cir. 1998) (citing Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 51 (1st Cir. 1986)).

presented as witnesses Mr. Guillermo Rammos, Associate Vice President for Celebrity, and Mr.

Ramakrishna Rebbapragada, Director of International Sales and Marketing for RCCL.

## FINDINGS OF FACT

After considering the evidence presented in this case, the Court finds the following facts
to be uncontested:

1.    On March 7, 1995, A&A Tours and RCCL executed and signed a
      "Representation Agreement."  (Joint Exhibit I).

2.    In the Agreement, RCCL designated A&A Tours as an "International
      Representative" ("IR").  (Joint Exhibit I).

3.    Section 1 of the Agreement states that "RCCL hereby grants to IR the non-
      exclusive right to promote and sell through Travel Agents in the Caribbean . . .
      cruise vacations on vessels operated by RCCL . . ., and IR hereby agrees to
      actively promote and sell cruise vacations on the Vessels in accordance with the
      terms of this Agreement."  (Joint Exhibit I).

4.    Section 5 of the Agreement provides in pertinent part that: "[t]his Agreement will
      commence as of January 1, 1995 and shall continue until December 31, 1995;
      provided, either party may terminate this Agreement at any time prior to the
      expiration of the stated term, with or without just cause, upon one hundred
      eighty (180) days written notice to the other party."  (Joint Exhibit I).

5.      Section 25 of the Agreement indicates that: "[t]his Agreement, together with the Letter of Credit delivered pursuant to Section 8 above, constitutes the entire Agreement between the parties.   All prior negotiations, agreements and communications are merged in this Agreement and are superseded by it.   There are no representations, warranties or obligations by either party to the other except those set forth in this Agreement and the Letter of Credit.  The terms of this Agreement may not be waived, altered, modified, amended or supplemented in any manner whatsoever except by a written document duly executed by both RCCL and IR."  (Joint Exhibit I).

6.      The March 7, 1995 Agreement is the only signed agreement between A&A Tours and RCCL.

7.      The March 7, 1995 Agreement  is currently in full force and effect because the same has been verbally renewed on a yearly basis.

8.      No document has ever been signed by A&A Tours and RCCL to change or modify the terms and conditions of the Agreement of March 7, 1995.

9.      In 1997, RCCL acquired all of the assets of Celebrity and Celebrity became a wholly owned subsidiary of RCCL.

10.     Thereafter, Celebrity and A&A Tours entered into an oral agreement to have A&A Tours serve as international representative for Celebrity for most of the

islands in the Caribbean.  The terms of the oral agreement were the same of the agreement between RCCL and A&A Tours.

11.    On November 21, 2005, RCCL and Celebrity sent a letter to A&A Tours indicating that, pursuant to the provisions of Section 5 of the Agreement, the current term of the Agreement expires on December 31, 2005.  RCCL advised A&A Tours in the letter that it will not be renewing A&A's right to promote and sell cruise vacations on Royal Caribbean International vessels  for the following countries: Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti.  Similarly, Celebrity advised that it was not renewing A&A's rights to promote and sell cruise vacations on vessels operated by Celebrity for the following countries: Aruba, the Bahamas, Barbados, Cuba, Curacao and Haiti.  The letter further stated the intent of RCCL and Celebrity to renew the relationship with respect to all other islands in the Caribbean.  (Joint Exhibit II).

12.    A&A Tours serves 25 islands in the Caribbean for RCCL and Celebrity.

13.    The performance of A&A Tours through the years was excellent and generally exceeded the goals established by RCCL and Celebrity.

14.    A&A Tours received several awards and recognitions from RCCL and Celebrity through the years for its excellent performance, dedication and professionalism including verbal and written letters of congratulations and appreciation. (Plaintiff's Exhibits 1, 2, 3, 4 and 5).

15.     A&A Tours was selected "RCCL's International Representative" for the years 1991 and 1992. (Plaintiff's Exhibit 4).

16.     A letter of August 29, 2000 signed by Mr. Bill Rammos, former RCCL's Managing Director Latin America & Asia Pacific, to "Whom it May Concern" reads, in pertinent part, as follows: "[w]e are pleased to confirm that A&A Tours of Puerto Rico is our Exclusive Sales Representative for Puerto Rico and the Caribbean since 1988.   During this period, A&A Tours has continuously demonstrated strong dedication and professionalism.   Royal Caribbean International Ltd. values the business relationship with A&A Tours."  (Plaintiff's Exhibit 2).

17.     Mr. Rammos, as former RCCL's Managing Director Latin America & Asia Pacific, was not authorized to amend an existing representation agreement with an international representative.

18.     Multiple advertisements of A&A Tours were published in the media announcing cruise vacations of RCCL and Celebrity in which it is indicated, besides the logo of A&A Tours, "Exclusive Representatives of Royal Caribbean and Celebrity Cruises for Puerto Rico and the Caribbean."  (Plaintiff's Exhibit 6).

19.     All international representatives ("IRS") of RCCL and Celebrity have "non-exclusive" representation agreements.

20.   The Agreement signed between RCCL and A&A Tours on March 7, 1995 is a standard agreement and is the same that has been signed with other IRS granting "non-exclusive" rights.

21.   A&A Tours was organized in Puerto Rico in November 1987 as a wholesaler and representative of several companies to sell vacations and cruises.

22.   The main shareholders of A&A Tours are Ms. Alina Castellanos, Mr. Alberto Castellanos and their mother.

23.   A&A Tours is a sales representative for RCCL, Celebrity, Worldwide Prestige, Kontiki and Trafalgar.

24.   A&A Tours, as a wholesaler, deals and represents many other travel companies in Guatemala, Panamá, Argentina, Chile, Peru, among other countries in Latin America and South America, and in several states in the United States.

25.   The representation by A&A Tours of RCCL started in May 1988 when Ms. Alina Castellanos, President of A&A Tours, started selling vacations for RCCL on a commission basis.  No written contract was signed.  The territory granted to A&A Tours started with Puerto Rico in 1988, and with Dominican Republic, USVI, BVI and St. Maarteen in 1992.  The rest of the Caribbean territory was awarded to A&A Tours in 1993.

26.   There was no presence of RCCL in the Caribbean islands when A&A started as a sales representative.

27.     A&A, including Ms. Alina Castellanos and her staff, invested valuable time, work and effort to develop these markets for RCCL cruises and creating a demand for its products.    Multiple trips, through the 12 years of the relationship, were organized to the Caribbean islands by A&A and its staff to promote RCCL to travel agents in order for them to sell RCCL's vacations.

28.     A&A Tours trained the travel agents in the territory explaining how to sell RCCL's vacations.

29.     The only office of A&A Tours is located in San Juan, Puerto Rico and it has sixty (60) employees.   A&A Tours does not have any other office or subsidiary in any other location in the world.

30.     All promotions and advertising for RCCL and Celebrity done by A&A Tours originate in Puerto Rico.

31.     All reservations and sales by A&A Tours for cruise vacations with RCCL and Celebrity are done through Puerto Rico.

32.     All travel tickets issued by A&A Tours for RCCL and Celebrity are issued in Puerto Rico.

33.     The sales and marketing by A&A Tours for RCCL and Celebrity's vacations are done in Puerto Rico.

34.     A&A Tours pays taxes in Puerto Rico.

35.    A&A Tours always surpassed the goals established by RCCL and Celebrity except for one year.

36.    All advertisements by A&A Tours of RCCL and Celebrity are approved by RCCL and Celebrity prior to publication.

37.    The economic impact on A&A Tours if RCCL and Celebrity do not renew A&A's right to promote and sell cruise vacations on Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti is a loss of $1,000,000.00 in commissions per year.

38.    A&A Tours will also lose rapport with its clients and its reputation will be affected if RCCL and Celebrity do not renew A&A's right to promote and sell cruise vacations on Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti.

39.    A&A Tours may have to lay off some of its employees if RCCL and Celebrity do not renew A&A's right to promote and sell cruise vacations on Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti.

40.    No other representation agreement between RCCL and A&A Tours has ever been signed after the March 7, 1995 Agreement because A&A Tours has refused to sign any other sales representation agreements with RCCL and Celebrity because the drafts of the agreements contain some clauses to which A&A Tours

does not agree.  In 2004, negotiations ensued in order to reach a representation agreement to no avail.

41.   RCCL and Celebrity never complained about A&A Tours' performance of sales.

42.   There are other companies in the islands of Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti which also sell cruise vacations for RCCL and Celebrity such as Travel Net in the Dominican Republic which sells Celebrity cruises.

43.   Direct internet sales to purchase vacations or cruises of RCCL and Celebrity are performed by people in the Caribbean through Expedia, Travelocity, Orbitz and Vacations-to-go. A&A Tours has complained about these sales to RCCL.  A&A Tours only receives commissions for the internet sales done directly on RCCL's web page.

44.   Passengers may book vacations with RCCL and Celebrity without the intervention of A&A Tours through the internet with companies such as Expedia, Travelocity, Orbitz and Vacations-to-go or by calling a local travel agent in the main land.

45.   A&A Tours is not authorized to sign any type of contract on behalf of RCCL or Celebrity.

46.   A&A Tours is not authorized to extend credit on behalf of RCCL or Celebrity.

47.   A&A Tours is not required to have any inventories of cabins on the vessels of RCCL and/or Celebrity.

48.   A&A Tours has no control over the pricing of the cabins on the vessels of RCCL and/or Celebrity.

49.   A&A Tours does not have discretion to change or vary the terms of sales of RCCL and Celebrity.

50.   The total sales of A&A Tours for the Caribbean (including Puerto Rico) for RCCL and Celebrity was of $50,000,000.00 in 2005. Of the $50,000,000.00 amount, $6,900,000.00 was for the Caribbean, excluding Puerto Rico. Of the $6,900,000.00 amount, $3,900,000.00 was sales for the islands of Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti, which RCCL and Celebrity wish not to renew.

51.   The $3,900,000.00 of sales for the islands of Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti represents a 57% of the sales of the Caribbean, excluding Puerto Rico (which amounts to $6,900,000.00).

52.   The $3,900,000.00 of sales for the islands of Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti represents an 8% of the total sales for the Caribbean, including Puerto Rico (which amounts to $50,000,000.00).

53.     A&A Tours spent approximately $1,200,000.00 in 2005 in advertising and publicity for RCCL and Celebrity in the islands of the Caribbean to develop the Caribbean market.

54.     Advertising expenses are shared between A&A Tours and RCCL and Celebrity. RCCL and Celebrity do participate in the payment of the advertising for RCCL and Celebrity in the islands of the Caribbean.

55.     The travel contracts are between the passengers and RCCL/Celebrity and not between the passengers and A&A Tours.  Thus, A&A Tours does not close sale contracts on behalf of RCCL and/or Celebrity.

56.     A letter of December 22, 2005 of Mr. William Thomas, Senior Associate Counsel of RCCL, reads in pertinent part as follows: ". . . please not that the current term of the Contract expires by its terms on December 31, 2005.  Therefore  we [RCCL] are not terminating A&A's rights, but simply not renewing the Contract with respect to the territories described in our letter of November 21, 2005 *i.e.* Aruba, Bahamas, Barbados, Cuba, Curacao, Dominican Republic and Haiti. Therefore, A&A's rights with respect to these territories terminate as of December 31, 2005. . . The Contract will continue in place with respect to Puerto Rico and certain other Caribbean islands. . ."  (Joint Exhibit III).

## PRELIMINARY INJUNCTION STANDARD

A court presented with a request for preliminary injunction must assess the following four factors:

(1) the likelihood of success on the merits;

(2) the potential for irreparable harm if the injunction is denied;

(3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and

(4) the effect (if any) of the court's ruling on the public interest.

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991); Ross-Simons v. Baccarat, 102 F.3d 12, 15 (1st Cir. 1996); ESSO v. Mujica-Cotto, 327 F.Supp.2d 110, 129-130 (D. Puerto Rico 2004) *aff'd,* 389 F3d212 (1st Cir. 2004).

"The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002) (*citing* Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993)).

It has been held that "irreparable harm constitutes a necessary threshold showing for an award of preliminary injunctive relief." Charlesbank Equity Fund II Ltd. v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (*citing* Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004)). The burden is on the movant to demonstrate that the denial of preliminary injunctive relief is likely to cause irreparable harm and such showing must be "grounded on something

more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store." ESSO, 327 F.Supp.2d at 130-131.

Article 6 of Law 21, 10 L.P.R.A. § 279(e) provides a sales representative with a provisional remedy pending litigation to continue in all its terms, the relation established by the sales representative agreement and/or to abstain to conduct any act or omission in prejudice thereof. As a matter of law, trial courts under the First Circuit Court of Appeals considering granting preliminary injunctive may use in considering the injunctive relief the above "quadripartite" test as established in Narragansett Indian Tribe, 934 F.2d at 5. *See generally* A.M. Capen's Co., Inc. v. American Trading and Production Corporation, 74 F.3d 317, 322-23 (1st Cir. 1996) (authorizing the use of the test in a Law 75 claim); Innovation Marketing v. Tuffcare Inc., 31 F.Supp. 2d 218, 222 (D. Puerto Rico 1998) (same).

## ANALYSIS

### A.    **The Representation Agreement**.

There is no controversy A&A Tours holds a valid sales representation agreement in Puerto Rico and the Caribbean for RCCL and Celebrity.  The March 17, 1995 Agreement signed between A&A Tours and RCCL governs this relationship and the March 7, 1995 Agreement is the only signed agreement between A&A Tours and RCCL.  The March 7, 1995 Agreement is currently in full force and effect because the same has been verbally renewed on a yearly basis.  No document has ever been signed by A&A Tours and RCCL to change or modify the terms and conditions of the Agreement of March 7, 1995.  In 1997, RCCL acquired

all of the assets of Celebrity and Celebrity became a wholly owned subsidiary of RCCL. Thereafter, Celebrity and A&A Tours entered into an oral agreement to have A&A Tours serve as international representative for Celebrity for most of the islands in the Caribbean.  The terms of the oral agreement were the same of the agreement between RCCL and A&A Tours.

The March 17, 1995 Agreement granted A&A Tours a non-exclusive right.  Section 1 of the Agreement reads that "RCCL hereby grants to IR the **non-exclusive right** to promote and sell through Travel Agents in the Caribbean . . . cruise vacations on vessels operated by RCCL . . ., and IR hereby agrees to actively promote and sell cruise vacations on the Vessels in accordance with the terms of this Agreement."  (Emphasis added; Joint Exhibit I).

Section 5 of the Agreement provides in pertinent part that: "[t]his Agreement will commence as of January 1, 1995 and shall continue until December 31, 1995; provided, either party may terminate this Agreement at any time prior to the expiration of the stated term, with or without just cause, upon one hundred eighty (180) days written notice to the other party." (Joint Exhibit I).

Section 25 of the Agreement indicates that: "This Agreement, together with the Letter of Credit delivered pursuant to Section 8 above, constitutes the entire Agreement between the parties.  All prior negotiations, agreements and communications are merged in this Agreement and are superseded by it.   There are no representations, warranties or obligations by either party to the other except those set forth in this Agreement and the Letter of Credit.  The terms of this Agreement may not be waived, altered, modified, amended or supplemented in any

Alina & a Tours, Inc. v. Royal Caribbean Cruises Ltd and Celebrity Cruises Inc.
Civil No. 06-1009 (JAG)
Report and Recommendation
Page 16

manner whatsoever except by a written document duly executed by both RCCL and IR."  (Joint

Exhibit I).

A letter of December 22, 2005 of Mr. William Thomas, Senior Associate Counsel of

RCCL, reads in pertinent part as follows: ". . . please not that the current term of the Contract

expires by its terms on December 31, 2005.  Therefore  we [RCCL] are not terminating A&A's

rights, but simply not renewing the Contract with respect to the territories described in our letter

of November 21, 2005 *i.e.* Aruba, Bahamas, Barbados, Cuba, Curacao, Dominican Republic

and Haiti.  Therefore, A&A's rights with respect to these territories terminate as of December

31, 2005. . . The Contract will continue in place with respect to Puerto Rico and certain other

Caribbean islands. . ."  (Joint Exhibit III).

Thus, it is uncontested the Agreement is valid and in good standing.  Neither party is

challenging the validity of the agreement.[2]

A&A Tours claims its cause of action in under local Law 21, 10 L.P.R.A. § 279 *et seq*;

local Law 75, 10 L.P.R.A. § 278 *et seq*; and the general breach of contract provisions of the

Puerto Rico Civil Code.   (Docket No. 1, Exhibit B).

In turn, RCCL and Celebrity claim that A&A Tour's cause of action is exclusively under

Law 21 and the same is not applicable because A&A Tours is not an exclusive sales

---

[2] Nonetheless, we note that A&A Tours claims, in its Opposition to Defendant's Motion to Dismiss in Order to Compel Arbitration of Contractual Dispute, that the Agreement was an adhesion contract and avers that the arbitration and choice of law clauses are objectionable.  (Docket No. 13).

representative within the territory of Puerto Rico as required by Law 21.  In addition, Law 21

does not apply extraterritorially to other markets or jurisdictions.  (Docket No. 14).

**B.      Legal Standard under Law 21 and Law 75.**

Local Law 21, 10 L.P.R.A. § 279 *et seq.*, prohibits a principal from terminating its

agreement with an exclusive sales representative without just cause. 10 L.P.R.A. § 278. Law 21

is modeled after the Dealer's Contract Law, also known as Law 75, and it is well settled that

applicable jurisprudence to Law 75 is also of application in controversies as per Law 21.

Law 75 was designed to protect Puerto Rican "dealers" from a manufacturer's arbitrary

termination or ending their commercial relationship with the Puerto Rican distributors who had

prior thereto developed a market for their products.  Medina & Medina v. Country Pride Foods,

Ltd., 858 F.2d 817, 820 (1st Cir. 1988). Pursuant to Law 75, a manufacturer cannot terminate

its agreement with a dealer except for "just cause." 10 L.P.R.A. § § 278a; *See* Matosantos

Commercial Corporation v. SCA Tissue of North America, 2004 WL 1778279 (D. Puerto Rico

2004).

Law 75 defines a "dealer" at 10 L.P.R.A. § 278(a) as follows:

a person actually interested in a dealer's contract because of his having effectively
in his charge in Puerto Rico the distribution, agency, concession or
representation of a given merchandise or service.

A "Dealer's Contract" is defined in § 278(b) as a:

relationship established between a dealer and a principal or grantor whereby and
irrespectively of the manner in which the parties may call, characterize or execute
such relationship, the former actually and effectively takes charge of the

distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico.

*See generally* Linea Aéreas Costarricenses, S.A. v. Caribbean General, Inc., 682 F.Supp. 117, 121 (D. Puerto Rico 1988); González v. Brown Group, 628 F.Supp. 436, 439 (D. Puerto Rico 1985).

Trial courts have discretion to apply a series of factors (facts and circumstances surrounding the supplier/distributor/sales relationship) which determine whether or not relationship is protected by Law 75. Marina Industrial, Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983) (*relying* on Warner Lambert Company v. Tribunal Superior, 101 D.P.R. 378 (1973)).

The Puerto Rico Supreme Court has established eight factors (guideposts) that determine whether the claimant has acquired protected status: (1) activities necessary to the transportation of the products from the manufacturer to the consumer or to some point in between; (2) publicity; (3) market coordination; (4) merchandise delivery; (5) collections; (6) keeping inventory; (7) promotion; (8) closing of sales contracts. No single factor is deemed to be conclusive. Accessories & Communication Systems, Inc. v. Nortel Cala Inc., 85 F.Supp.2d 95, 98 (D. Puerto Rico 2000).

Law 75 is to be liberally construed in favor of finding the distribution relationship. *See, e.g.*, Computec Systems Corp. v. General Automation, Inc., 599 F.Supp. 819, 826 (D. Puerto Rico 1984) (where a distributor sued for slander of business reputation: "[t]he Act provides for a liberal interpretation in furtherance of the remedial considerations behind it.")

Law 75 provisions were intended to protect Puerto Rico's dealers from the harm caused when a supplier arbitrarily terminates a distributorship once the dealer has created a favorable market for the supplier's products, "thus frustrating the legitimate expectations and interests of those who so efficiently carried out their responsibilities," Medina & Medina v. Country Pride Foods, Ltd., 858 F.2d 817, 820 (1st Cir. 1988). The Act has been described as "very much a 'one-way street' designed to protect dealers from the unwarranted acts of termination by suppliers," Nike Int'l Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1237 (D. Puerto Rico 1988).

Resembling Law 75, Law 21 protects Puerto Rico sales representatives from arbitrary terminations after they create a market for their principals. An essential element of a Law 21 claim is the existence of an "exclusive sales representation contract" entered after December 5, 1990. 10 L.P.R.A § 279.

Law 21 defines a sales representative as "an independent entrepreneur who establishes a sales representation contract of **an exclusive nature**, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." 10 L.P.R.A. § 279(a) (Emphasis supplied). The law fails to define when a sales representative relationship is considered "exclusive," and local courts have yet to interpret its meaning. However, when interpreting contracts pursuant to Act 75, courts have noted that exclusivity is generally apparent either from the contract or from the arrangements agreed upon between the parties. R.W. Intern. Corp. v. Welch Food, Inc., 13 F.3d 478 (1st Cir. 1994); Ballester Hermanos, Inc. v. Campbell Soup, Co., 797 F.Supp. 103, 105 (D. Puerto Rico 1992).

In <u>Innovation</u>, 31 F.Supp 2d. at 221, quoting <u>Triangle Trading Co., Inc. v. Robroy</u> <u>Industries, Inc.</u>, 952 F.Supp. 75, 78 (D. Puerto Rico 1997), *aff'd*, 200 F3d. 1 (1st Cir. 1999), this District Court explained that "[t]he forgoing legal provisions clearly reflect that the determination of whether a particular plaintiff is a 'dealer' under Act 75, or a sales representative under Act 21, is essentially a fact-specific one, which can rarely be rendered based on the pleadings alone."

Moreover, the First Circuit Court in <u>Borschow Hospital and Medical Supplies, Inc. v.</u> <u>Cesar Castillo</u>, 96 F.3d 10 (1st Cir. 1996), stated that "[a]lthough 'non-exclusive distributors are entitled to protection under Law 75,' [i]t is equally true ... that Law 75, does not operate to convert non-exclusive distribution contracts into exclusive distribution contracts." *Id*. at 14 (citing <u>General Office Products v. Gussco Manufacturing, Inc.</u>, 666 F.Supp. 328, 331 (D. Puerto Rico 1987) and <u>Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc.</u>, 23 F.3d 564, 569 (1st Cir. 1994)); *see also* <u>Innovation</u>, 31 F.Supp. 2d at 221.

Furthermore, the Court in <u>Borschow</u>, 96 F.3d at 14, citing <u>Vulcan Tools</u>, 23 F.3d 564, 569, explained that "the 'established relationship' between dealer and principal is bounded by the distribution agreement, and therefore the Act only protects against detriments to contractually acquired rights." "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." 31 L.P.R.A. § 3471. "Under Puerto Rican law, an agreement is 'clear' when it can 'be understood in one sense alone, without leaving any room for doubt, controversies or difference of

interpretation....' "  Innovation, 31 F.Supp. 2d at 221; Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 69 (1st Cir. 1995).

Where a contractual term providing for "non-exclusive" distributorship is clear and unambiguous, there is no need to consider extrinsic evidence of promise to limit number of distributors even absent contractual integration clause. Innovation, 31 F.Supp. 2d at 221; Vulcan Tools, 23 F.3d at 564-68. It is well settled law that where a contract is unambiguous, its literal meaning must be applied.  31 L.P.R.A. § 3471.

## C. **Likelihood of Success on the Merits.**

### Law 21.

It is undisputed in this case that the Agreement of March 7, 1995 in Section One indicates that "RCCL hereby grants to IR the **non-exclusive right** to promote and sell through Travel Agents in the Caribbean . . . cruise vacations on vessels operated by RCCL . . ., and IR hereby agrees to actively promote and sell cruise vacations on the Vessels in accordance with the terms of this Agreement."  (Emphasis added; Joint Exhibit I).

Being a "non-exclusive" sales representation contract, A&A cannot prevail on its claim under Law 21 because by disposition a sales representative must be an "exclusive" representative; further RCCL and Celebrity may not be barred from distributing and selling their products to other representatives. *See* Vulcan Tools, 23 F.3d at 569 (Law 75 did not prevent supplier from establishing additional distributorships in Puerto Rico where non-exclusive distributor was already operating even if existing distributor suffered economic harm as result);

Nike Int'l Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1238- 39 (D.P.R.1988) (where distributorship contract between Nike and distributor provided for notice of renewal from distributor and distributor failed to provide such notice, Law 75 did not bar termination of distributorship contract);  Innovation, 31 F.Supp. 2d at 221 (same).

A&A Tours does not challenge the fact that Section One of the Agreement in fact characterizes the agreement as "non exclusive." Nonetheless, A&A Tours claims than in practice, the parties have interpreted the Agreement as "exclusive" and acted as such.

The aforementioned case law effectively rebuts A&A's contention of exclusivity, since the March 7, 1995 sales representation agreement clearly and unambiguously provides that the Agreement is "non-exclusive."  As testified by Mr. Guillermo Rammos, the Agreement signed by A&A Tours is the standard non-exclusive sales representative agreement that RCCL and Celebrity execute with all other international representatives world-wide.  If the sales agreement were to be on an exclusive basis, it would be stated explicitly.  See Innovation, 31 F.Supp. 2d at 222.

Ms. Castellanos, President of A&A Tours, fully aware of the non-exclusive nature of the Agreement signed the same, "with full knowledge that it was as drafted a non-exclusive contract simply because there is no hint whatsoever establishing an 'exclusive' arrangement." Innovation, 31 F.Supp. 2d at 222.

As expressed before, it is a well settled doctrine of Puerto Rican law that where a contract is unambiguous, its literal meaning must be applied.  31 L.P.R.A. § 3471.  The contract gives

no support whatsoever to A&A Tours' claim of exclusivity.   Failing to demonstrate exclusivity

from the face of the contract, A&A Tours relies on the extrinsic testimony and evidence to show

an extrinsic verbal amendment to the contract.  To this effect, A&A Tours presented a letter of

August 29, 2000 signed by Mr. Bill Rammos, former RCCL's Managing Director Latin America

& Asia Pacific, to "Whom it May Concern" which reads, in pertinent part, as follows: "[w]e are

pleased to confirm that A&A Tours of Puerto Rico is our Exclusive Sales Representative for

Puerto Rico and the Caribbean since 1988.  During this period, A&A Tours has continuously

demonstrated strong dedication and professionalism.  Royal Caribbean International Ltd. values

the business relationship with A&A Tours."  (Plaintiff's Exhibit 2).

RCCL and Celebrity rebutted this extrinsic evidence with the testimony of Mr. Rammos

who indicated that he, as former RCCL's Managing Director Latin America & Asia Pacific, was

not authorized to amend an existing representation agreement with an international

representative.  In other words, Mr. Rammos could not have amended (through the letter only

signed by him) the written Agreement between RCCL and A&A Tours of March 7, 1995.

We note that the clear wording of Section 25 of the Agreement contradicts this extrinsic

evidence as well inasmuch it is clearly stated that the terms of this Agreement may not be

waived, altered, modified, amended or supplemented in any manner whatsoever except by a

written document duly executed by both RCCL and IR."  (Joint Exhibit I).

In addition, A&A Tours presented multiple advertisements of A&A Tours which were

published in the media announcing cruise vacations of RCCL and Celebrity in which it is

Alina & a Tours, Inc. v. Royal Caribbean Cruises Ltd and Celebrity Cruises Inc.
Civil No. 06-1009 (JAG)
Report and Recommendation
Page 24

indicated, besides the logo of A&A Tours, "Exclusive Representatives of Royal Caribbean and Celebrity Cruises for Puerto Rico and the Caribbean." (Plaintiff's Exhibit 6). The content of these advertisements was not challenged by RCCL and/or Celebrity.

As properly recognized in Innovation, 31 F.Supp. 2d at 222, in interpreting the substantive terms of parole evidence, the Puerto Rico Supreme Court has expressly established that "[t]he strict mandate of the cited art. 1233 [31 L.P.R.A. § 3471] obliges us to abide by the literal meaning of the terms of the contract when, as in the present case, they leave no doubt as to the intention of the contracting parties." Marina Ind., 114 P.R.Dec. at 64. This same argument was rejected in Borschow, 96 F.3d at 14, applying the principle stated in Executive Leasing Corp., 48 F.3d at 69, expressing that: ". . . to consider extrinsic evidence at all, the court must first find the relevant terms of the agreement unclear." When the requirement was not met the district court went no further.

Accordingly, and following the principles recognized by this District in Innovation and the First Circuit in Executive Leasing Corp, this United States Magistrate Judge will not consider extrinsic evidence because the Agreement is clear. The Agreement between A&A Tours and RCCL and Celebrity expressly states in Section One of the Agreement that it is non-exclusive (Joint Exhibit I), and the remedial provisions of Law 21 may not operate to convert non-exclusive contracts into exclusive contracts. *See generally*, Innovation, 31 F.Supp at 223; Borschow, 96 F.3d at 14.

In view of the above, A&A Tours is unlikely to succeed on the merits under local Law 21.[3]

**Law 75.**

A review of the complaint in this case shows that A&A Tours has invoked Law 75 in addition to Law 21.

We first note that Law 21 "is an offspring of the Dealer's Contract Law", also known as Law 75.  Tavárez v. Champion Products, Inc.  903 F.Supp. 268, 271 (D. Puerto Rico 1995). In 1988, the Supreme Court of Puerto Rico in Roberto, Inc. &  Roberto Colón v. Oxford Indus., Inc., 122 D.P.R. 115 (1988) held that Law 75 did not protect sales representatives.  Alarmed by the lack of legal protection for sales representatives, the Puerto Rico legislature passed Law 21.  *See* Tavárez,  903 F.Supp. at 271.  Law 21, as a special law created to protect sales representatives in particular, prevails over the general provisions of Law 75 applicable to "dealers."[4]  Accordingly, Law 21 should prevail in this case.

In any event, since A&A Tours invokes Law 75, we now analyze its application to this case. From the evidence presented at the evidentiary hearing, it is uncontested that RCCL had no presence in the Caribbean when its started its relationship with A&A Tours in 1988.  It is also uncontested that A&A Tours developed the Caribbean market for RCCL and Celebrity and

---

[3] In view of our recommendation, we find no need to discuss RCCL and Celebrity's additional argument that Law 21 has no extraterritorial application.

[4] Article 12 of the Civil Code, P.R. Laws Ann., Tit. 31 Sec. 12 directs us to supplement the special law with the general provisions of the Civil Code." Matosantos Commercial Corp. v. SCA Tissue of North America, LLC, 2004 WL 1778279, 2 (D.Puerto Rico 2004).  Accordingly,  a special law over a subject prevails over the general law.  Córdova & Simonpietri v. Crown American, 112 D.P.R. 797 (1982); Paris v. Canety, 73 D.P.R. 403 (1952).

invested valuable time and effort in doing so.    Furthermore, A&A Tours participated in the

publicity for RCCL and Celebrity in the Caribbean and prepared advertisements.  These factors

militate in favor finding that the relationship is protected under Law 75.

Nonetheless, the evidence presented at the evidentiary hearing by RCCL and Celebrity

shows that A&A Tours does not meet the definition of a "dealer" under Law 75 and is thus not

subject to the protections and remedies afforded by Law 75.  As previously indicated, the

Agreement is not exclusive in nature.  Additionally, A&A Tours does not fulfill the following

factors to be considered in determining the existence of a dealer or distributor under Law 75.

For example, pursuant to the evidence presented at the evidentiary hearing, it is

uncontested that: A&A Tours is not authorized to sign any type of contract on behalf of RCCL

or Celebrity; A&A Tours is not authorized to extend credit on behalf of RCCL or Celebrity; A&A

Tours is not required to have any inventories of cabins on the vessels of RCCL and/or Celebrity;

A&A Tours has no control over the pricing of the cabins on the vessels of RCCL and/or

Celebrity; A&A Tours does not have discretion to change or vary the terms of sales of RCCL

and Celebrity; advertising expenses are shared between A&A Tours and RCCL and Celebrity

because RCCL and Celebrity do participate in the payment of the  advertising for RCCL and

Celebrity in the islands of the Caribbean; the travel contracts are between the passengers and

RCCL/Celebrity and not between A&A Tours and the passengers; A&A Tours does not close

sale contracts on behalf of RCCL and/or Celebrity; there are other companies in the islands of

Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti which also

sell cruise vacations for RCCL and Celebrity such as Travel Net in the Dominican Republic which sells Celebrity cruises; direct internet sales to purchase vacations or cruises of RCCL and Celebrity are performed by people in the Caribbean through Expedia, Travelocity, Orbitz and Vacations-to-go; passengers may book vacations with RCCL and Celebrity without the intervention of A&A Tours through the internet with companies such as Expedia, Travelocity, Orbitz and Vacations-to-go or by calling a local travel agent in the main land. (See above Findings of Fact Nos. 42-49 and 54-55).[5]

Furthermore, it is uncontested that the Agreement in this case is not being terminated. Joint Exhibit III reads in pertinent part that ". . . please not that the current term of the Contract expires by its terms on December 31, 2005.  Therefore we [RCCL] are not terminating A&A's rights, but simply not renewing the Contract with respect to the territories described in our letter of November 21, 2005 i.e. Aruba, Bahamas, Barbados, Cuba, Curacao, Dominican Republic and Haiti.  Therefore, A&A's rights with respect to these territories terminate as of December 31, 2005. . . The Contract will continue in place with respect to Puerto Rico and certain other Caribbean islands. . ." (Joint Exhibit III).  Accordingly, it is uncontested the Agreement has not been terminated because it currently governs the islands of the Caribbean serviced by A&A Tours and not mentioned in this letter.  Thus, it is uncontested that RCCL and Celebrity's

---

[5] *See generally* Au-Port, Inc. v. MBR Industries, Inc., 772 F.Supp. 1301 (D.P.R. 1991); Borg Warner International Corp. v. Quasar Company, 138 D.P.R. 60 (1995); Roberto Gómez, Inc. v. Oxford Industries, Inc., 122 D.P.R. 115 (1988).

intention is not to renew A&A's right to promote and sell cruise vacations on RCCL and Celebrity in several islands of the Caribbean.

In view of the above, and upon a balancing of the factors to be considered, the relationship between A&A Tours and RCCL and Celebrity is not protected by Law 75.  As such, A&A Tours is unlikely to succeed on the merits under local Law 75.[6]

### Traditional Tort and Breach of Contract Actions.

In view of the above, A&A Tours claims may only survive under a traditional tort and breach of contract claim.  Assuming for the sake of the argument, that A&A Tours is likely to succeed on the merits under a  traditional tort and breach of contract claim, A&A Tours' request for injunctive relief fails because A&A Tours has failed to demonstrate irreparable harm, as we explain below.

### D.    Irreparable Harm and Balance of Equities.

A&A Tours has failed to present any evidence to support its claim that it will suffer irreparable injury if the preliminary injunction is not issued.  This Court has stated that

---

[6] In light of our conclusion, there is no need to analyze whether the Agreement was terminated for just cause or not.  Nonetheless, we note that negotiations ensued between RCCL/Celebrity and A&A Tours for the signing of a new Agreement.  However, A&A Tours refused to sign any other agreement with RCCL and Celebrity because it does not agree to the terms included in the draft agreement of RCCL and Celebrity, which is similar to the one which has been signed by other international representatives.  Whether this may constitute just cause for a termination under Law 75 is a matter we need to solve at this stage.

stereotypical and unsupported allegations of "irreparable damage" are insufficient to merit the issuance of injunctive relief.  *See* Picker International v. Kodak Caribbean, Ltd., 826 F. Supp. 610, 613 (D.P.R. 1993).

The evidence presented by A&A Tours shows that the damages to be suffered, if any, are economic damages and loss of reputation.  Mr. Alberto Castellanos, Vice-President of A&A Tours, testified that the economic impact on A&A Tours, if RCCL and Celebrity do not renew A&A's right to promote and sell cruise vacations on Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti, is of a loss of $1,000,000.00  in commissions per year; loss of rapport with its clients and its reputation; and the possible lay off some of its employees.

Furthermore, Mr. Castellanos testified that, of the $50,000,000.00 total sales of A&A Tours for 2005, $3,900,000.00 were for sales of the islands of Aruba, the Bahamas, Barbados, Cuba, Curacao, the Dominican Republic and Haiti.  Thus, the $3,900,000.00 sales for these islands (that RCCL/Celebrity do not wish to renew) represent an 8% of the total sales for the Caribbean of A&A Tours, including Puerto Rico (which amounts to $50,000,000.00).  Thus, if the Agreement is not renewed for these islands of the Caribbean, an 8% of the total sales of A&A Tours' will be affected.

Assuming the above constitutes "injury", it can be repaired by means other than an injunction.  An injunction --of any kind— should not be issued in this case because of the simple fact that A&A Tours has available alternative legal remedies to redress its legal grievance and

it has failed to show that any "urgent" or immediate equitable relief should issue at this juncture of the case.  Moore's Federal Practice 3D § 65.36 [3].  Picker, Int'l, 826 F. Supp. at  611.  All of its alleged injuries, which involve loss of income and reputation, may be compensated with a monetary award.  This fact alone precludes granting of the injunctive relief.  Freightliner, L.L.C. v. Puerto Rico Truck Sales, Inc., 399 F.Supp.2d 57, 77 (D. Puerto Rico 2005); Puerto Rico Conservation Foundation v. Larson, 797 F. Supp. 1066, 1069 (D. Puerto Rico 1992); Luis Rosario, Inc. v. Amana Refrigeration, Inc., 733 F. 2d at 174.  Loss of income, without more, does not establish irreparable harm.  Freightliner, 399 F.Supp.2d at 77.

In sum, A&A Tours' attempt to obtain injunctive relief at this time lacks competent evidence concerning their allegations of irreparable harm and for this reason alone should not prosper. Matos v. Clinton Sch. Dist., 367 F.3d 68, 73 (1st Cir. 2004) (*citing* Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 217 F.3d 8 (1st Cir. 2000) (failure to show irreparable harm is sufficient grounds for denying preliminary relief even if the other requirements of the preliminary injunction standard are met); Freightliner, 399 F.Supp.2d at 77.

For these same reasons, the balance of the equities tilts toward RCCL and Celebrity. Because the potential harms to A&A Tours are not irreparable, and in fact would consist of economic damages easily recoverable, the harms from not granting the injunctive relief do not outweigh the harms that would be inflicted to RCCL and Celebrity if the relief is granted because RCCL and Celebrity may not be barred from distributing and selling its products to other representatives.

## E.    Effect of the Court's Ruling on the Public Interest.

If the preliminary injunction is granted in the instant case the same could affect the public interest, as it could imply that an Agreement in writing clearly stating that the relationship is "non-exclusive" be unilaterally transformed into an exclusive relationship by one party without the consent of the other. This could certainly affect RCCL and Celebrity inasmuch other Agreements (similar to the one in question) have been signed with other international representatives worldwide.   In addition, RCCL and Celebrity would be barred from distributing and selling its products to other representatives even though the contracts are non-exclusive. Considering above discussed, the public interest is not favored by issuing A&A Tours' preliminary injunction request.

## CONCLUSION

In view of the foregoing, it is this Magistrate Judge's opinion A&A Tours has failed to establish *prima facie* the prerequisites for entitlement to preliminary injunctive relief, as well as under the requisites for the granting a temporary restraining order and provisional injunction. Accordingly, it is recommended that A&A Tours' Motion and Memorandum of Law for Temporary Restraining Order and Preliminary Injunction (Docket No. 5) **BE DENIED.**

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order.   Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792

Alina & a Tours, Inc. v. Royal Caribbean Cruises Ltd and Celebrity Cruises Inc.
Civil No. 06-1009 (JAG)
Report and Recommendation
Page 32

F.2d 4 (1st Cir. 1986). *See* Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d

985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role

reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial

hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 24th day of January of 2006.


                              s/CAMILLE L. VELEZ-RIVE
                              CAMILLE L. VELEZ-RIVE
                              UNITED STATES MAGISTRATE JUDGE